UNITED STATES *v.* DIXIE SUPPLY CO. (No. 4601)[1]

United States Court of Customs and Patent Appeals, June 28, 1949

*David N. Edelstein*, Assistant Attorney General (*Joseph F. Donohue* and *Sybil Phillips*, special attorneys, of counsel), for the United States.
*Philip Stein* (*Lang, Byrd, Cross & Ladon* of counsel) for appellee.

[Oral argument April 5, 1949, by Mr. Donohue and Mr. Stein]

Before GARRETT, Chief Judge, and HATFIELD, JACKSON, O'CONNELL, and JOHNSON, Associate Judges

JOHNSON, Judge, delivered the opinion of the court:

This is an appeal by the United States from the judgment of the United States Customs Court, First Division, rendered pursuant to its decision, Abstract 52255 (20 Cust. Ct. 294), sustaining Protest 122808–K/119 filed by appellee against the assessment of duty on certain pins under paragraph 1527 (c) (2) of the Tariff Act of 1930 at an aggregate rate of 110% of the value thereof in addition to an assessment of an internal revenue tax of ¾¢ per pound pursuant to section 3425, Internal Revenue Code, on the copper content of the merchandise.

It is claimed in the protest that the merchandise is dutiable under

[1] C. A. D. 412.

paragraph 397 of the Tariff Act of 1930 as modified by the Mexican Trade Agreement, T. D. 50797, as articles composed wholly or in chief value of silver, not specially provided for, at 32½% ad valorem. There is no issue here as to the propriety of the assessment of the internal revenue tax.

In its decision, the Customs Court correctly said,

The imported articles are shield-like pins sold to and worn by the personnel of the Gulf Coast Air Force as part of their military uniform. Such a pin was a necessary part of the uniform and its wearing was compulsory. The plaintiff was permitted to sell military equipment but was not authorized to manufacture insignia. The plaintiff had the Mexican manufacturers copy an approved sample and it is this product so manufactured in Mexico that is now before us. If these imported pins are military insignia, they are excluded from the provisions of paragraph 1527 (c) (2). If they are military ornaments, they are properly dutiable as classified under paragraph 1527 (c) (2). * * *

Paragraph 1527 (c) (2), *supra*, reads as follows:

(c) Articles valued above 20 cents per dozen pieces, designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, cardcases, chains, cigar cases, cigar cutters, cigar holders, cigar lighters, cigarette cases, cigarette holders, coin holders, collar, cuff, and dress buttons, combs, match boxes, mesh bags and purses, millinery, military and hair ornaments, pins, powder cases, stamp cases, vanity cases, watch cases, watch bracelets, and like articles; all the foregoing and parts thereof, finished or unfinished:
    *     *     *     *     *     *     *

(2) composed wholly or in chief value of metal other than gold or platinum (whether or not enameled, washed, covered, or plated, including rolled gold plate), or (if not composed in chief value of metal and if not dutiable under clause (1) of this subparagraph) set with and in chief value of precious or semiprecious stones, or imitation pearls, 1 cent each and in addition thereto three-fifths of 1 cent per dozen for each 1 cent the value exceeds 20 cents per dozen, and 50 per centum ad valorem.

Paragraph 397, *supra*, as modified by the Mexican Trade agreement, reads as follows:

Articles or wares not specially provided for, if composed wholly or in chief value of silver____32½% ad valorem.

The War Department acting under statutory authority issued regulations and directives requiring all Army personnel of the Gulf Coast Air Force Training Center to wear the distinctive insignia approved by the War Department as part of their regulation uniform and equipment. Under the directives, the distinctive insignia could be sold only by dealers who had been granted a certificate to sell them, and the insignia could be manufactured only by manufacturers who had been granted a certificate to manufacture them. The directives also provided that only Army personnel of the Gulf Coast Air Force Training Center were authorized to wear that distinctive insignia. The directives provided for a penalty of fine and imprisonment for the violation of the directives.

The evidence discloses that the appellee was issued a certificate to sell the above mentioned distinctive insignia; that it sold many of them that had been manufactured by an authorized manufacturer; that it secured a large number of the insignia from a Mexican manufacturer (there is no evidence that the Mexican manufacturer had been granted a certificate to manufacture the imported merchandise here involved); that appellee sold many of those distinctive insignia to authorized dealers, Army post exchanges, Quartermaster supply warehouses, and to persons authorized to purchase them at retail; that all of the imported articles were sold only to persons required to wear them as military insignia without any exception being made by the War Department as to their form, design, quality, or military authenticity; and that the sale of the involved merchandise to those required to wear it as a part of their uniform and equipment was not prohibited by Army authorities who must be charged with knowledge of the proper insignia required to be worn.

Mr. Abe Kenneth Fisch, a partner in the appellee company, testified that he had been engaged as a jobber of general merchandise for five years handling military insignia, novelties, and military apparel; that he had handled over 1,000,000 military insignia of different kinds; that he had purchased thousands of Gulf Coast Area insignia from the Albin Manufacturing Company which was authorized by the War Department to manufacture the Gulf Coast Area insignia; and that the imported merchandise was identical to that obtained from the Albin Manufacturing Company. Mr. Fisch also testified that he did not have authority to manufacture Army insignia, and that he did not ascertain whether or not the Mexican manufacturer was authorized to manufacture Army insignia.

The government contends that insignia made by unauthorized manufacturers should not be regarded as military insignia for want of proper authorization, regardless of whether such insignia meets the specifications of War Department directives. The importer contends that as the articles at bar comply with the specifications of the War Department directives they would be authentic military insignia despite the lack of authorization to manufacture them. Counsel for both parties agreed that there is no question about the merchandise here involved being in chief value of silver.

Military insignia and vocational articles are not dutiable under the provisions of paragraph 1527 (c) of the Tariff Act of 1930 and predecessor paragraphs of prior tariff acts, but are dutiable as articles not specially provided for according to the particular metal or material from which they are made. *United States* v. *Horstmann Co.*, 14 Ct. Cust. Appls. 443, T. D. 42079; *United States* v. *Gaunt*, 15 Ct. Cust. Appls. 94, T. D. 42183; *Meadows Wye & Company, Inc. et al.* v. *United States*, 19 Cust. Ct. 105, Abstract 51825.

Whether the involved merchandise be authentic military insignia as contended by the appellee, or whether it not be authentic military insignia by reason of not being made by an authorized manufacturer, as contended by the government, it cannot legally be worn as "articles * * * designed to be worn on apparel or carried on or about or attached to the person such as and including * * * military ornaments * * *"; therefore, we are of the opinion that the merchandise here involved was dutiable as "Articles or wares not specially provided for, if composed wholly or in chief value of silver" under paragraph 397 of the Tariff Act of 1930 as modified by the Mexican Trade Agreement, T. D. 50797.

The judgment of the United States Customs Court, First Division, is *affirmed*.

HATFIELD, Judge, sat during the argument of this case but, due to illness, did not participate in the decision.